UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUE ANNE LINDA BECKWITH,

                Plaintiff,

v.                                       3:13-CV-1555
                                       (GTS)
COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OFFICE OF PETER W. HILL                     PETER W. HILL, ESQ.
 Counsel for Plaintiff
P.O. Box 823
384 Main Street
Oneonta, NY 13820-0823

U.S. SOCIAL SECURITY ADMIN.             BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Sue Anne Linda Beckwith ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 8, 11.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

   Plaintiff was born on October 14, 1970.  She received a high school diploma and is licensed to practice as a licensed practical nurse ("LPN").  Plaintiff has worked as an LPN, certified nurse assistant, photographer and bank teller.  Generally, Plaintiff's alleged disability consists of a back condition and depression.  Plaintiff's alleged disability onset date is September 16, 2010 and her date last insured is December 31, 2015.

   B. **Procedural History**

   On October 15, 2010, Plaintiff applied for Social Security Disability Insurance. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 2, 2012, Plaintiff appeared before the ALJ, Barry Ryan.  (T. 34-55.)  The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on August 7, 2012.  (T. 10-33.)  On October 31, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C. **The ALJ's Decision**

   Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 16-27.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 16.)  Second, the ALJ found that Plaintiff's bulging disc is a severe impairment, but that her other alleged impairments, including her depression, anxiety and adjustment disorder, are not severe.  (T. 16-20.)  Third, the ALJ found that Plaintiff's impairment does not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 21.)  The ALJ considered Listing

1.04. (*Id.*) Fourth, the ALJ found that, during the course of an eight-hour workday, Plaintiff has the residual functional capacity ("RFC") to "lift/carry up to 20 pounds on an occasional basis; lift/carry up to 10 pounds on a frequent basis; stand for a total of six hours; walk for a total of six hours; and sit for a total of six hours." (T. 21-26.) Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 26-27.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ did not fulfill his affirmative duty to develop the record. (Dkt. No. 8 at 8-9 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in weighing the opinions of several medical sources because he (a) improperly gave the opinion of Plaintiff's treating physician, Dr. Ellen Larson, little weight in violation of the treating physician rule; (b) erroneously afforded great weight to the opinions of Dr. Charles I. Hancock and Dr. Woodrow W. Janese; and (c) used the opinion of Dr. Justine Magurno inconsistently. (*Id.* at 9-15.) Third, and finally, Plaintiff argues that the ALJ erred when he assessed her credibility. (*Id.* at 16-19.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 11 at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 10-13.) Third, and finally, Defendant argues that the ALJ properly determined that there are a significant number of jobs in the national economy that Plaintiff can perform. (*Id.* at 13-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

5

## IV. ANALYSIS

### A. Whether the ALJ Erred in Weighing the Medical Opinions of Record

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8 at 8-15 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in weighing the opinions of her treating physician, Dr. Ellen M. Larson, M.D.; consultative examiner, Dr. Justine Magurno, M.D.; and non-examining consultants, Drs. Woodrow Janese, M.D. and Charles I. Hancock, M.D. Defendant counters that the ALJ properly evaluated the medical opinion evidence.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, the record contains treatment records from Plaintiff's family practice physician, Dr. Larson, spanning August 2009, when Plaintiff was initially injured at work, through April 2012. (T. 265-274, 407-538.) In April 2012, Dr. Larson completed a functional capacity evaluation form at the request of Plaintiff's worker's compensation insurance carrier. (T. 409-410.) In her evaluation, Dr. Larson opines that Plaintiff is totally disabled from performing her previous occupation or from working at any other occupation or type of employment outside of her former occupation or employer. (T. 409.) Next, Dr. Larson opines that Plaintiff can stand, sit and walk for one to two hours in an eight-hour workday, with breaks, ideally changing position at five-to-ten minute intervals. (*Id.*) In the very next question, Dr. Larson is asked to check a box next to

7

the work capacity applicable to Plaintiff, including very heavy work, heavy work, medium work, light work or sedentary work, each defined solely by the ability to lift or carry certain weight. In response to that question, Dr. Larson checked "Sedentary Work" which is defined as "Occasional lifting 0-10 lbs. maximum (notebooks, small tools, etc.)." (*Id.*)

Also in the record is the examination report of consultative examiner, Dr. Magurno. Dr. Magurno performed an orthopedic examination of Plaintiff on February 28, 2011, after which she provided the opinion that Plaintiff had marked limitations for lifting and carrying; moderate for walking, standing and bending; mild for squatting, sitting and reaching; and moderate-to-marked for pushing and pulling. (T. 297-300.) Dr. Magurno noted that Plaintiff's range of motion of both her upper and lower extremities is limited somewhat due to pain. (T. 299.)

In addition, the ALJ requested expert opinions regarding Plaintiff's physical RFC from Dr. Hancock, a retired orthopedic surgeon, and Dr. Janese, a neurosurgeon. (T. 572-583, 560-571.) Each completed a medical source statement of Plaintiff's functional limitations. (T. 596-601, 584-589.) Both Dr. Hancock and Dr. Janese opined that Plaintiff can lift and carry up to 20 pounds frequently and 50 pounds occasionally and that she can sit, stand and walk for a total of six hours in an eight-hour workday. (T. 596-597, 584-585.) Dr. Hancock opined that Plaintiff can sit two hours at a time, stand four hours at a time and walk six hours at a time while Dr. Janese opined that Plaintiff can sit, stand and walk for six hours at a time. (T. 597, 585.)

The record also includes results of MRIs of Plaintiff's lumbar spine and thoracic spine taken in 2009, 2010 and 2011. A September 22, 2009 MRI of Plaintiff's lumbar spine revealed minor degenerative change of the lower lumbar spine without mass effect or displacement of neural structure and a slight loss of lordosis with minor scoliosis that may in part be positional or

8

spasm. (T. 263-264.) A September 30, 2010 MRI of the lumbar spine revealed minimal circumferential disc bulge at L4-L5, which does not cause mass effect upon the neural structures, and a tiny central disc protrusion at L5-S1, which also does not cause mass effect upon the neural structures. The radiologist further noted that the remainder of the lumbar spine MRI scan is unremarkable and stable relative to the prior exam. (T. 261.) A December 13, 2011 lumbar spine MRI, as compared to the prior study of September 30, 2010, reveals a subligamentous bulge of the L5-S1 disc. (T. 400.)

A June 28, 2010 MRI of the thoracic spine revealed findings consistent with mild thoracic spondylosis and degenerative disc disease. No significant spinal or foraminal stenosis or cord compression is identified. The radiologist also noted that the exam is significantly degraded by patient motion. (T. 262.) A December 1, 2011 MRI of the thoracic spine revealed a 2 mm central disc herniation that impresses on the ventral cord at T7-T8, but with no significant spinal canal stenosis or neural foraminal narrowing. (T. 402.)

The ALJ assigned little weight to the opinion of Plaintiff's treating physician, Dr. Larson and some weight to consultative examiner, Dr. Magurno, but placed great weight on the opinions of Drs. Janese and Hancock. In support of his decision that Dr. Larson's opinion is entitled to less than controlling weight, the ALJ noted that her opinion is inconsistent and contradictory to the extent she opines Plaintiff is capable of sedentary work but also that she is totally disabled from working in any capacity. (T. 26.) In addition, the ALJ noted that Dr. Larson is "merely a family practitioner" and there is no evidence that she referred Plaintiff to a neurologist or orthopedist or that Plaintiff ever sought treatment from a neurologist or orthopedist. The ALJ also noted that Dr. Larson's opinion is inconsistent with those of Drs. Hancock and Janese.

9

Finally, the ALJ stated that "the consistent findings in [Plaintiff's] imaging studies simply do not support the level of disability that Dr. Larson found in [Plaintiff]." (*Id.*)

First, the ALJ correctly noted that Dr. Larson's opinions regarding Plaintiff's level of disability and her sedentary work capacity are seemingly contradictory. Plaintiff argues that such a finding triggers the ALJ's duty to seek clarification from Dr. Larson in this regard rather than rely on the inconsistency to assign little weight to her opinion.

To be sure, the ALJ has an affirmative duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ... must on behalf of all claimants ... affirmatively develop the record...." (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir.2009)) (internal quotation mark omitted)). By statute, an ALJ is duty bound to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir.1998) (citing 42 U.S.C. § 423(d)(5)(B) *as incorporated by* 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)). This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *Id.* (quoting *Lamay*, 562 F.3d at 509). Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. *See* 20 C.F.R. § 404.1512(e). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1512(e)(1); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir.1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998).

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913[1] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Here, despite the apparent completeness of Dr. Larson's treatment records, there is an ambiguity created by her responses to the functional evaluation inquiries by Plaintiff's worker's compensation carrier that could be resolved with further contact. First, as Defendant notes, the determination of 100% disability is one properly left to the Commissioner. Therefore, Dr. Larson's opinion in that regard is not relevant and should not be relied on by the ALJ as a basis to find an inconsistency that warrants assigning little weight to her other opinions regarding Plaintiff's functional imitations. Under these circumstances, the ALJ had a duty to re-contact Dr. Larson for clarification.

Moreover, the ALJ erred in assigning little weight to Dr. Larson's opinion based in part on his finding that she never referred Plaintiff to a neurologist or orthopedist. The record clearly

---

[1] Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

11

reflects that Dr. Larson referred Plaintiff to neurosurgeon, Dr. Carl Spivak, M.D., who examined Plaintiff and recommended she continue the same course of treatment advised by Dr. Larson. (T. 455-457.)  Further, the ALJ's conclusion that "the consistent findings in [Plaintiff's] imaging studies simply do not support the level of disability that Dr. Larson found in [Plaintiff]" fails to cite any supporting competent medical source and is therefore an improper lay opinion.

The ALJ also relied on his lay interpretation of the imaging studies to assign no weight to Dr. Magurno's opinion that Plaintiff has marked limitations for lifting and carrying.  In addition, the ALJ noted that Dr. Magurno's findings that Plaintiff was observed to have a normal gait, full squat and negative straight leg raising test were inconsistent with her opinion regarding Plaintiff's limitations for lifting and carrying.  However, Dr. Magurno also noted that Plaintiff's range of motion in her upper and lower extremities were somewhat limited due to pain.  In addition, Dr. Magurno's observation of Plaintiff's ability to do a full squat is qualified by Plaintiff's need for assistance in rising by pressing on a table with two hands.  Also, regarding the straight leg raising test, Dr. Magurno noted that Plaintiff experienced pain on her right side at 60 degrees, but that the test is technically negative because the pain did not radiate.  The Court is unable to ascertain whether the ALJ considered these findings in his assessment of Dr. Magurno's opinion because he failed to address them in his decision.  Accordingly, it was error for the ALJ to give no weight to Dr. Magurno's opinion that Plaintiff is markedly limited in her ability to lift and carry.

Given that the ALJ erred in his assignment of weight to the opinions of the only two examining sources he considered, consequently, it was error for him to place great weight on the opinions of the nonexamining sources, Drs. Larson and Hancock.

For these reasons, remand is necessary so that the ALJ may re-evaluate the medical source opinions. On remand, the ALJ should first re-contact Dr. Larson for clarification of her opinions regarding Plaintiff's functional abilities and limitations. The ALJ should also explain his reasons for assigning no weight to Dr. Magurno's opinion regarding Plaintiff's limitation for lifting and carrying. Against that backdrop, the ALJ should then re-evaluate the weight assigned to the opinions of the non-examining sources.

### B. Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative. The Court would add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ considered Plaintiff's allegations regarding her impairments and related symptoms during the application process and at her hearing and found that her medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 23.) Specifically, the ALJ found that Plaintiff's allegations and sworn testimony are not supported by the objective medical evidence, including the imaging studies and medical source opinions, including those of the non-examining medical experts, who each opined that Plaintiff is capable of performing a full range of light work.

For the reasons indicated in Part IV.A. of this Decision and Order, the ALJ erred in his weighing of the medical source opinion evidence. Accordingly, to the extent the ALJ relies on his erroneous evaluation of those opinions in order to conclude that Plaintiff's allegations of impairments and symptoms are not fully credible, that conclusion is likewise erroneous. Therefore, remand is necessary so that the ALJ may revisit his evaluation of Plaintiff's credibility after reevaluating the medical source opinions on a fully developed record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 111 is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: February 27, 2015
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge